IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

TERRY NORWOOD,                    )
                                  )
        Plaintiff,                )
                                  )        NO. 1:19-cv-00020
    v.                            )
                                  )        JUDGE RICHARDSON
MAGNETI MARELLI OF                )
TENNESSEE, LLC,                   )
                                  )
        Defendant.                )

**MEMORANDUM OPINION**

Pending before the Court is Defendant Magneti Marelli of Tennessee, LLC's Motion for

Summary Judgment (Doc. No. 39, "Defendant's Motion"), supported by an accompanying brief

(Doc. No. 40). Plaintiff Terry Norwood filed a response (Doc. No. 43), and Defendant filed a reply

(Doc. No. 47). Also pending before the Court is Plaintiff's Motion for Summary Judgment (Doc.

No. 36 "Plaintiff's Motion"), supported by an accompanying brief (Doc. No. 37). Defendant filed

a response (Doc. No. 45).

For the reasons stated below, Defendant's Motion will be granted in part and denied in part

and Plaintiff's Motion will be denied.

**FACTUAL BACKGROUND**[1]

Defendant is an auto parts manufacturer with a plant located in Pulaski, Tennessee. (Doc.

No. 44 at ¶ 1). Plaintiff began working for Defendant in February 2015 as a line operator. (*Id*. at ¶

---

[1] The following facts, unless somehow qualified herein (as for example by "[deponent] testified that . . ."), are taken
as true for purposes of this motion, because they are either: (1) asserted and evidentially supported by one party and
not rebutted by the other side; (2) otherwise not in genuine dispute; (3) asserted and evidentially supported by the non-
movant and thus credited by this Court even if disputed by the movant; or (4) subject to judicial notice. All testimony
referred to herein is deposition testimony.

2). During Plaintiff's employment, he was promoted to the position of team lead over "Zone One," which manufactures headlight lenses for various automobile manufacturers. (*Id*. at ¶ 3).

In June 2017, Plaintiff fell on a window ledge at his home and injured his shoulder. (*Id*. at ¶ 4). On August 21, 2017, Dr. Jeffrey Adams, an orthopedic surgeon, assessed Plaintiff's injury and diagnosed Plaintiff with a "traumatic incomplete tear of right rotator cuff." (*Id*. at ¶¶ 7-8). Plaintiff elected to undergo right shoulder arthroscopy to repair his rotator cuff, and Dr. Adams scheduled the surgery for August 30, 2017. (*Id*. at ¶¶ 9-10).

Plaintiff informed his supervisor of his need to be absent from work for surgery, and his supervisor instructed Plaintiff to contact Prudential, Defendant's third-party administrator of leaves. (*Id*. at ¶¶ 11-12). On August 23, 2017, Plaintiff contacted Prudential by phone and made an application for benefits. (*Id*. at ¶ 13). Specifically, Plaintiff sought FMLA leave and short-term disability benefits. (*Id*. at ¶ 14). Prudential subsequently sent Plaintiff a letter dated August 23, 2017, confirming receipt of his request for FMLA leave and short-term disability benefits. (*Id*. at ¶ 15). On August 25, 2017, Prudential sent Plaintiff a letter approving his FMLA leave from August 31, 2017 to November 20, 2017. (*Id*. at ¶ 16). Plaintiff requested FMLA leave through November 30, 2017, but Plaintiff was approved for FMLA only through November 20, 2017 because that was the date that his 12-week FMLA entitlement was exhausted. (*Id*. at ¶¶ 17-18). Nevertheless, Plaintiff believed that he was entitled to leave through November 30, 2017, because, according to Plaintiff, a Prudential representative told him that he was approved through November 30, 2017. (*Id*. at ¶ 20).

On September 18, 2017, Plaintiff attended a follow-up visit with Dr. Adams. (*Id*. at ¶ 21). At this appointment, Dr. Adams noted that Plaintiff was "doing well at this point from surgery" and instructed Plaintiff "to continue working with physical therapy." (*Id*. at ¶ 22). Plaintiff was to

return for a follow-up appointment with Dr. Adams six weeks after his September 18, 2017 appointment, and to remain off work until that time. (*Id*. at ¶¶ 23-24). Plaintiff then reported to Prudential that he needed to be off work for another six weeks. (*Id*. at ¶¶ 25-26). On October 19, 2017, Plaintiff attended another follow-up appointment with Dr. Adams. (*Id*. at ¶ 27). At that appointment, Dr. Adams noted that Plaintiff continued to improve but Plaintiff needed an additional six weeks of physical therapy. (*Id*. at ¶ 28). Plaintiff again notified Prudential of his continued need for FMLA leave. (*Id*. at ¶ 29). On October 23, 2017, Prudential sent Plaintiff a letter updating him on the status of his leave approvals. (*Id*. at ¶ 30). The letter stated "[b]ased on medical information in your claim, your loss of income benefits and any available leave benefits have been extended through November 30, 2017." (*Id*. at ¶ 31). Additionally, the letter indicated that Plaintiff's FMLA leave would be extended until November 20, 2017. (*Id*. at ¶ 32).[2]

On November 8, 2017, Defendant's Human Resources Manager sent Plaintiff a letter stating that

> You have been absent from work and you will have exhausted all your Family Medical Leave Act (FMLA) leave granted you [sic] on November 21, 2017. You are ineligible for any additional leave of absence as required by state and federal laws or under any company policy. If you cannot return to work without restrictions by November 22, 2017 we cannot continue to hold your position at Magneti Marelli.
> . . .
> As a terminating employee, there are a number of issues you will need to be aware of. Your medical, dental, and vision benefits will end effective November 31, 2017 [sic]. . . .

(*Id*. at ¶¶ 34-35, Doc. No. 36-6 at 26). The November 8, 2017 letter further instructed Plaintiff to contact Defendant's employee, Kim Brady, with any questions. (Doc. No. 44 at ¶ 36). Plaintiff

---

[2] Plaintiff asserts that the language "any available leave benefits have been extended through November 30, 2017" led him to believe that his FMLA leave was extended until November 30, 2017. (Doc. No. 44 at ¶ 20). Defendant asserts that this language referred to Plaintiff's short-term disability benefits. (*Id*. at ¶ 31). After this language, the letter clearly states that Plaintiff's FMLA leave would be exhausted on November 20, 2017, and Plaintiff does not dispute this. (*Id*. at ¶ 32).

testified that he contacted Ms. Brady and informed her that he would not be released to return to work until November 30, 2017, to which she replied "I know you're not coming back" and hung up the phone. (*Id*. at ¶¶ 37-38). Ms. Brady testified that she did not recall having any communication with Plaintiff. (*Id*.).

On November 20 or 21, Plaintiff went to the plant and cleaned out his locker. (*Id*. at ¶ 40). When he arrived at the plant, Plaintiff was unable to enter because his badge had been de-activated, and Defendant's security officers informed him that according to their list, he had been terminated on November 8, 2017. (*Id*. at ¶¶ 41, 43). Nevertheless, Plaintiff was allowed to retrieve his belongings. (*Id*. at ¶ 42). Hannah McMahon, Defendant's Human Resources Manager, testified that to the extent the security list indicated that Plaintiff was terminated on November 8, 2017, it was merely an administrative error in Defendant's termination logs. (*Id*. at ¶ 44). According to Ms. McMahon, Plaintiff's effective date of termination was November 22, 2017. (*Id*. at ¶ 45). Plaintiff disputes that November 22, 2017 was his termination date because several of Defendant's internal records reflect November 8, 2017 as the date of Plaintiff's termination. (*Id*.).

On December 6, 2019, Dr. Adams released Plaintiff to return to work, over 14 weeks after Plaintiff's last day of work, which was August 28, 2017. (*Id*. at ¶¶ 46, 51).

On February 1, 2019, Plaintiff filed his Complaint in this Court, asserting claims of disability discrimination in violation of the Tennessee Disability Act ("TDA") ("Count One"); interference and retaliation in violation of the Family Medical Leave Act ("FMLA") ("Count Two"), and disability discrimination, failure to accommodate, failure to engage in the interactive process, and retaliation in violation of the Americans with Disability Act ("ADA") ("Count Three"). On October 10, 2019, Plaintiff filed his Amended Complaint alleging the same claims.

On February 5, 2020, the parties filed their respective motions for summary judgment. These motions are now ripe for review.

## LEGAL STANDARD

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In other words, even if genuine, a factual dispute that is irrelevant or unnecessary under applicable law is of no value in defeating a motion for summary judgment. *See id.* at 248. On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine[.]'" *Id.*

A fact is "material" within the meaning of Rule 56(c) "if its proof or disproof might affect the outcome of the suit under the governing substantive law." *Anderson*, 477 U.S. at 248. A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Harris v. Klare*, 902 F.3d 630, 634-35 (6th Cir. 2018). The party bringing the summary judgment motion has the initial burden of identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Pittman v. Experian Information Solutions, Inc.*, 901 F.3d 619, 627-28 (6th Cir. 2018). If the summary judgment movant meets that burden, then in response the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Id*. at 628.

A party asserting that a fact cannot be or genuinely is disputed—*i.e.*, a party seeking summary judgment and a party opposing summary judgment, respectively—must support the assertion by citing to materials in the record, including, but not limited to, depositions, documents,

affidavits or declarations. Fed. R. Civ. P. 56(c)(1)(A). In reviewing a motion for summary judgment, this court must view the evidence in the light most favorable to the nonmoving party. *Tlapanco v. Elges*, 969 F.3d 638, 647 (6th Cir. 2020) (quoting *Anderson*, 477 U.S. at 248). Likewise, the court should view the facts and draw all reasonable inferences in favor of the non-moving party. *Pittman*, 901 F.3d at 628. Credibility judgments and weighing of evidence are improper. *Hostettler v. College of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018). As noted above, where there is a genuine dispute as to any material fact, summary judgment is not appropriate. *Id*. The court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id*. The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive summary judgment; rather, there must be evidence upon which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

"The standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation." *New Century Found. v. Robertson*, 400 F. Supp. 3d 684, 689 (M.D. Tenn. 2019) (citing *Ferro Corp. v. Cookson Group, PLC*, 585 F.3d 946, 949 (6th Cir. 2009). "[S]ummary judgment in favor of either party is not proper if disputes remain as to material facts. Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id.* (quoting *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)). In addition, "if the moving party will bear the burden of persuasion at trial, then that party must support its motion with credible evidence that would entitle it to a directed verdict if not controverted at trial." *Timmer v. Michigan Dep't of Commerce*, 104 F.3d 833, 843 (6th Cir. 1997) (citing *Celotex Corp*., 477 U.S. at 322-23); *see also Ely v. Dearborn Heights School*

*Dist. No. 7*, 150 F. Supp. 3d 842, 849-50 (E.D. Mich. 2015) (explaining that if the moving party bears the burden of proof at trial that party "must satisfy both the initial burden of production on the summary judgment motion—by showing that no genuine dispute exists as to any material fact—and the ultimate burden of persuasion on the claim—by showing that it would be entitled to a directed verdict at trial." (citing William W. Schwarzer, et al., *The Analysis and Decision of Summary Judgment Motions*, 139 F.R.D. 441, 477–78 (1992))).

## ANALYSIS

### I. Family Medical Leave Act

#### A. *FMLA Interference*

FMLA interference occurs when an employer "shortchange[s] [an employee's] leave time, den[ies] reinstatement, or otherwise interfere[s] with [an employee's] substantive FMLA rights." *Marshall v. The Rawlings Co., LLC*, 854 F.3d 368, 384-85 (6th Cir. 2017). "Employees invoking the [interference] theory must prove that their employer interfered with or denied them an FMLA benefit to which they were entitled." *Edgar v. JAC Prod., Inc.*, 443 F.3d 501, 511 (6th Cir. 2006) "This inquiry is an objective one divorced from the employer's motives, with the central question being simply whether the employee was entitled to the FMLA benefits at issue." *Id*. "[T]his central question must be answered in the negative when the employee is incapable of returning to work, or of performing an essential function of her position, at the end of the statutory-leave period." *Id*. at 511-512.

To establish a *prima facie* claim of FMLA interference, a plaintiff must demonstrate at trial that: (1) he was an eligible employee as defined by the FMLA; (2) the defendant was an employer as defined by the FMLA; (3) the plaintiff was entitled to leave under the FMLA; (4) the plaintiff gave the defendant notice of his intention to use FMLA leave; and (5) Defendant denied him FMLA benefits to which he was entitled. *Edgar*, 443 F.3d at 507 (citation omitted).

FMLA interference claims follow the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972). *See Donald v. Sybra, Inc*., 667 F.3d 757, 762 (6th Cir. 2012). Thus, if a plaintiff establishes his or her *prima facie* case, the burden shifts to the defendant to offer a legitimate non-discriminatory explanation for its action. *See id*. If the defendant does so, the burden shifts back to the plaintiff, who must introduce evidence showing that the proffered explanation is pretextual. *See id*. at 761-62.

Here, only the final element is disputed, as the parties are in agreement that the first four elements are met. (Doc. No. 46 at ¶¶ 1-5).

1. *Element Five: Whether Defendant denied Plaintiff FMLA benefits to which he was entitled?*

i. Defendant's Motion

Defendant argues that Plaintiff's FMLA interference claim cannot survive summary judgment because "employers may terminate employees who have not been cleared by their doctors to return to work at the end of their FMLA leave" and Plaintiff was not released to return to work until December 6, 2017, after his FMLA leave exhausted. (Doc. No. 40 at 10 (citing *Hasenwinkel v. Mosaic*, 809 F.3d 427, 433 (8th Cir. 2015); *Cehrs v. Ne. Ohio Alzheimer's Research Ctr*., 155 F.3d 775, 785 (6th Cir. 1998)). Defendant points to the FMLA regulation that states:

> If the employee is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition or an injury or illness also covered by workers' compensation, the employee has no right to restoration to another position under the FMLA.

29 C.F.R. § 825.216.

Defendant also relies on *Cehrs*, where the plaintiff, a nurse at an Alzheimer's research facility, suffered from a chronic ailment that prevented her from working when it flared up. 155

F.3d at 777. Although the precise date of the plaintiff's termination was in dispute, the court found that the evidence indisputably showed that the plaintiff was not released to resume her duties until March 1, 1994—over two weeks after her FMLA leave period ended. *Id*. at 778. The court held that, because the plaintiff "was clearly unable to return to work within the period provided by the FMLA," the defendant was entitled to summary judgment on the FMLA claim. *Id*. at 785. The court explained that an employer does not violate the FMLA when it terminates an employee who is incapable of returning to work at the end of the 12-week leave period allowed by the FMLA. *Id*. at 84-85

Here, it is undisputed that Plaintiff exhausted his 12-week allotment of FMLA leave on November 21, 2017. It is also undisputed that Plaintiff was not released to return to work until a later date—December 6, 2017. Thus, even viewing the evidence most favorable to Plaintiff, it is undisputed that Plaintiff was not medically released to return to work until after his FMLA leave expired. *See Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 429 (6th Cir. 2014) ("Thus, when an employee is indisputably unable to work at the end of the statutory leave period, he has not been denied any benefit to which he was entitled even if his employer denied his request for leave."). Accordingly, Defendant has met its initial burden of showing the absence of a genuine issue of material fact as to this element, thus shifting to Plaintiff the burden of showing that there actually is a genuine issue of material fact preventing judgment for Defendant as a matter of law.

In response to Defendant's Motion, Plaintiff argues that he "unequivocally testified that he would have come back when [Defendant] wanted him to come back," which (according to Plaintiff) means that it is not indisputable that he could not return to work prior to the exhaustion of his FMLA leave. (Doc. No. 43 at 15). Plaintiff's cite *Edgar* in support.

In *Edgar*, the court granted the defendant summary judgment on the plaintiff's FMLA interference and held that "an employer can lawfully fire an employee who is unable to return to work at the end of the FMLA leave period, *even if the termination occurs before the end of the period*."[3] 443 F.3d (emphasis added). Put slightly differently, such early termination does not violate the FMLA if the employee "is indisputably unable to return to work at the conclusion of the 12–week period of statutory leave." *Id*. at 506-07. Distinguishing two district court cases which the plaintiff relied upon, the court explained that in those cases, "the plaintiffs testified unequivocally that they would have returned to work by the end of the leave period if they had known that their jobs were at stake, and the employers could not demonstrate that the employees were medically unable to resume their positions." *Id*. (citing *Mendoza v. Micro Electric, Inc*., No. 02 C 8005, 2005 WL 331585 (N.D. Ill. Feb. 8, 2005); *Viereck v. City of Gloucester City*, 961 F. Supp. 703 (D.N.J. 1997)). The court further explained

---

[3] Here, there is a genuine dispute of fact regarding the date of Plaintiff's termination. Citing deposition testimony of Defendant's human resources manager), Defendant argues that Plaintiff was not terminated until November 22, 2017 (a day after his FMLA leave exhausted) and any document reflecting otherwise was merely "administrative error." Plaintiff contends that his termination date was November 8, 2017, because Defendant's internal records reflect this date as the date of Plaintiff's termination, this was the date communicated to the Tennessee Department of Labor, and Defendant's business records from Prudential (Defendant's third party benefits coordinator) indicate that Plaintiff was terminated on November 8. (Doc. No. 44 at ¶ 34). But even viewing Plaintiff's termination date as November 8 (a date prior to the exhaustion of Plaintiff's FMLA leave), Plaintiff's FMLA interference claim fails if Plaintiff was "indisputably unable to return to work at the conclusion of the 12–week period of statutory leave." *Edgar*, 433 F.3d at 506-07. In other words, under *Edgar*, even if the defendant terminated the plaintiff prior to the expiration of the plaintiff's FMLA leave period—which certainly sounds like "interference" with FMLA rights in at least some sense—the plaintiff has no valid FMLA interference claim if the plaintiff was unable to return to work at the conclusion of the actual expiration date. The rationale apparently is that there is no *practical* interference with FMLA rights if the plaintiff could not have returned to work by the actual expiration date; it does not make a practical difference whether defendant was permitted to be on (unpaid) FMLA leave all the way to its proper expiration date, or only until an (incorrect) earlier date, because either way the plaintiff's leave would have expired before he or she could have returned and thus preserved the right to keep the job.

Thus, in this case, because (as discussed below) Plaintiff could not have returned to work until after the expiration of his FMLA leave, the dispute of fact as to the termination date, though genuine, is not material. It therefore does not prevent the Court granting Defendant summary judgment on Plaintiff's claim if otherwise appropriate. The Court also notes that there is nothing in the record (besides a date on a piece of paper) to indicate that Plaintiff was actually terminated on November 8, not November 22. For example, prior to November 22, Plaintiff was not sent a termination letter, asked to clean out his locker, or subject to any other action that would indicate that Plaintiff was actually terminated.

The plaintiff in the present case, in contrast, has not pointed to any competent proof that contradicts the testimony of Drs. Day and Kedzierski. Both of those doctors were of the opinion that Edgar could not return to work until well after the FMLA -leave period had expired in December of 2002. Edgar instead relies on a statement in her own deposition testimony where she claimed that she would have been able to timely resume her duties. She acknowledged, however, that she was unaware of "what [her] doctors would have wrote down there to that respect." She also relies on an ambiguous answer given by Dr. Day, who said that she had no reason to doubt Edgar's statement that she "was prepared or preparing to return to work" when JAC terminated her. Dr. Day did not state, however, that Edgar could actually have returned to work. This testimony is therefore insufficient to establish that any mental health professional had released Edgar for work during the leave period, and does not contradict the consistent diagnoses of Drs. Day and Kedzierski.

*Id*. Thus, the court found that the defendant was entitled to summary judgment on the plaintiff's FMLA interference claim. *Id*.

When asked at his deposition whether he would have found some way to go back to work had Defendant informed him that he was going to lose his job, Plaintiff testified that "if somebody had actually let me know ahead of time, I would have made the calls myself, got with the doctor. I would have been more than glad to go back when they wanted me to go back." (Doc. No. 40-2 at 84-85). Thus, Plaintiff argues that he "unequivocally testified that he would have come back [to work] when they wanted him to come back." (Doc. No. 43 at 14 (citing *Edgar*, 433 F.3d at 510)).

However, Plaintiff does not proffer any evidence suggesting that he *actually would have been medically able* to return to work by November 20, 2017. (Doc. No. 36-5 at 7). It is one thing for Plaintiff to say that he *would* have returned. It is another to say that he *could* have returned, from a medical standpoint. If he cannot say (and adduce evidence of) the latter, then he fails to meet his burden of raising a genuine issue of material fact as to this element of his FMLA interference claim. And he has not said or shown this.[4] Like the plaintiff in *Edgar*, Plaintiff here

---

[4] To the contrary, his whole position, understandably enough, throughout his period of FMLA leave was that he could not return because he lacked his doctor's clearance; it was such lack of medical clearance that justified his taking FMLA leave. So he should not and will not now be heard to say that he was ready, willing *and able* to return to work prior to the expiration of his FMLA leave even without medical clearance.

has not proffered any evidence from a medical professional that he "could actually have returned to work" prior to the expiration of his FMLA leave. *Edgar*, 433 F.3d at 510. As the court explained in *Edgar*, a plaintiff's testimony that he would have returned to work "is therefore insufficient to establish that any [] health professional had released [Plaintiff] for work during the leave period," and does not contradict the diagnosis of the plaintiff's doctor. *Id*.; *see also Cutting v. Ferrous Processing & Trading Co*., No. 07-14422, 2008 WL 5102255, at *4 (E.D. Mich. Dec. 1, 2008) (explaining that the plaintiff had created a genuine issue of material fact as to whether he would have been able to return to work prior to the expiration of his FMLA leave where he testified unequivocally that he would have returned to work, *and he provided the affidavit of his doctor wherein the doctor stated that the plaintiff was actually capable of returning to work prior to the expiration of FMLA leave*).

Thus, even viewing this evidence in a light most favorable to Plaintiff, there is not a genuine issue of material fact as to whether he was able to return to work prior to the expiration of his FMLA leave. Accordingly, Plaintiff as a matter of law cannot establish the final element of his claim of FMLA interference, and Defendant's Motion is granted as to that claim.

ii. Plaintiff's Motion

 Plaintiff moves for summary judgment on his FMLA interference claim, arguing that it is undisputed that Plaintiff was terminated on November 8, 2017, prior to the exhaustion of his FMLA leave. (Doc. No. 37 at 9-11). Although it has granted Defendant summary judgment on this claim, thus indicating that Plaintiff necessarily must be denied summary judgment on this claim, the Court will independently evaluate Plaintiff's cross-motion on its own merits. Not surprisingly, given its decision on Defendant's motion, the Court concludes from such evaluation that Plaintiff's motion fails as to the FMLA interference claim.

The gist of Plaintiff's FMLA-interference argument is that by prematurely terminating his FMLA leave, Defendant interfered with his FMLA leave. The Court understands the surface appeal of this argument; early termination of leave would sound, to a layperson, like "interference" with such leave. But as noted above, under *Edgar* (and as suggested by the rationale of *Demyanovich*), early termination of FMLA leave does not legally constitute interference with FMLA leave if the employee "is indisputably unable to return to work at the conclusion of the 12–week period of statutory leave." *Edgar*, 433 F.3d at 506-07. So Plaintiff's theory of FMLA interference is fatally flawed in its conception.

And even if the theory were valid, it would not support summary judgment for Plaintiff on the current record. As noted above in a footnote, the date of Plaintiff's termination is a fact in genuine disputed. Contrary to Plaintiff, Defendant instead contends (citing the testimony of its Human Resources director) that Plaintiff was terminated on November 22, 2017. (*Id*. at ¶ 45). Viewing this evidence in a light most favorable to Defendant, which the Court must do on Plaintiff's Motion, a reasonable juror could find that Plaintiff was terminated after the date in which his FMLA leave exhausted (November 21, 2017). "Defendant does not violate the FMLA by demoting and terminating Plaintiff after she was given her full FMLA leave[.]" *Holmes v. Alive Hospice, Inc.*, No. 3:11-CV-0594, 2015 WL 459330, at *7 (M.D. Tenn. Feb. 3, 2015). Accordingly, viewing the evidence in a light most favorable to Defendant, a reasonable juror could conclude that no violation of the FMLA occurred. Therefore, Plaintiff in no event would be entitled to summary judgment on its FMLA interference claim, because he has not met his initial burden on summary judgment to show the absence of a genuine dispute of material fact. Plaintiff's Motion is denied as to his FMLA interference claim.

B. *FMLA Retaliation*

Federal regulations prevent an employer "from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights." 29 C.F.R. § 825.220(c). "The central issue raised by the retaliation theory . . . is 'whether the employer took the adverse action because of a prohibited reason or for a legitimate nondiscriminatory reason.'" *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 282 (6th Cir. 2012) (quoting *Edgar*, 443 F.3d at 508). In the context of a retaliation claim, unlike an interference claim, "[t]he employer's motive is relevant because retaliation claims impose liability on employers that act against employees specifically because those employees invoked their FMLA rights." *Id*. (internal citations and quotations omitted).

A plaintiff may prove FMLA retaliation with direct or circumstantial evidence of FMLA retaliation. *Kline v. Tenn. Valley Auth*., 128 F.3d 337, 348 (6th Cir. 1997). A plaintiff need only prove retaliation based on either direct or circumstantial evidence, not both. *Id*. at 348-49. If an employee presents direct evidence of improper motive, that employee "does not bear the burden of disproving other possible nonretaliatory reasons for the adverse action." *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 707 (6th Cir. 2008). Instead, "the burden shifts to the employer to prove by a preponderance of the evidence that it would have made the same decision absent the impermissible motive." *Id*.

If a plaintiff relies on indirect evidence of retaliation, a court must engage in the familiar *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972); *Donald v. Sybra, Inc*., 667 F.3d 757, 762 (6th Cir. 2012). Under that framework, a plaintiff must first establish a prima facie case. *Donald*, 667 F.3d at 761. In the case of an FMLA retaliation claim, that means show that

(1) he was engaged in an activity protected by the FMLA; (2) the employer knew that he was exercising her rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to him; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action.

*Id.* (quoting *Killian v. Yorozu Auto. Tenn., Inc*., 454 F.3d 549, 556 (6th Cir. 2006)). Under the *McDonnell-Douglas framework,* if the plaintiff establishes a prima facie case, "the burden shifts to the employer to proffer a legitimate, nondiscriminatory rationale for discharging the employee." *Edgar*, 443 F.3d at 508. If the employer establishes such reason, the burden then shifts to the plaintiff to show that the employer's proffered reason is pretextual. *Id.*

An employee can show pretext "by offering evidence that (1) the employer's stated reason had no basis in fact, (2) the stated reason did not actually motivate the employer, or (3) the stated reason was insufficient to warrant the adverse employment action." *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 590 (6th Cir. 2014). "The three-part test need not be applied rigidly. Rather, '[p]retext is a commonsense inquiry: did the employer fire the employee for the stated reason or not?'" *Blizzard v. Marion Tech. Coll*., 698 F.3d 275, 285 (6th Cir. 2012) (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009)). "Ultimately the plaintiff must produce 'sufficient evidence from which a jury could reasonably reject [the employer's] explanation of why it fired her.'" *Brown v. Kelsey-Hayes Co*., 814 F. App'x 72, 80 (6th Cir. 2020) (quoting *Chen*, 580 F.3d at 400).

But something more is required of the plaintiff. "To demonstrate pretext, a plaintiff must show *both* that the employer's proffered reason was not the real reason for its action, *and* that the employer's real reason was unlawful." *E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 767 (6th Cir. 2015) (citing *St. Mary's Honor Ctr. Hicks,* 509 U.S. 502, 515 (1993), and *Reeves v. Sanderson*

*Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000)).[5] In other words, if the burden then shifts back to the plaintiff, the plaintiff must show by a preponderance of the evidence that the defendant's reasons were not its true reasons and were instead actually a pretext for retaliation. *Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Sch.*, 974 F.3d 652, 661 (6th Cir. 2020). "To avoid summary judgment, then, the [plaintiff] must present evidence from which a reasonable jury could find that poor performance was not the real reason that [the defendant] terminated [the plaintiff], and that unlawful retaliation in fact was." *Ford Motor Co.*, 782 F.3d at 767. In some cases (and this is one, as discussed below), (1) the evidence that the defendant's proffered reason was not the proffered reason will serve equally as (2) evidence that the real reason was retaliation. After all, evidence may suggest that the defendant's proffered (non-retaliatory) reason was not the real reason precisely because it suggests that the real reason was retaliatory. But under Sixth Circuit law, the Court must be mindful to require evidence of both kinds, even if it is all the same evidence.

"Although '[t]he burden of establishing a *prima facie* case in a retaliation action is not onerous, but one easily met,' *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000), plaintiffs must nevertheless establish but-for causation at both the prima facie and pretext stages of the *McDonnell-Douglas* framework." *Adamov v. U.S. Bank Nat'l Ass'n*, 681 F. App'x 473, 477 (6th Cir. 2017). "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.* (quoting *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 2517, 2533 (2013)).

---

[5] One might ask why it is not enough to speak simply in terms of the requirement to show that the real reason was retaliation (the second requirement) without mentioning a separate requirement to show that the real reason was not the (non-retaliatory) reason proffered by Defendant. After all, the second seems necessarily subsumed in the first. But the Sixth Circuit has articulated these as separate requirements that each must be satisfied, and so the Court will proceed accordingly.

i. Defendant's Motion

In Defendant's Motion, apparently assuming Plaintiff's retaliation claim is based on indirect evidence and assuming arguendo that Plaintiff had established a prima facie case,[6] Defendant asserts that it has proffered a legitimate non-retaliatory reason for Plaintiff's termination, namely Plaintiff's exhaustion of his FMLA leave prior to the time he was able to return to work. (Doc. No. 40 at 12-13). Defendant then argues that "the burden then shifts back to [Plaintiff] to present evidence to suggest [Plaintiff's] stated reason for his termination was pretextual." (*Id*.). Defendant asserts that Plaintiff "admits he has no evidence supporting his claim that [Defendant] retaliated against him for taking FMLA leave" based on the follow deposition testimony:

> Q. [The Complaint] also says that you feel like Magneti Marelli retaliated against you for using your FMLA. How do you feel they retaliated against you?
>
> A. I don't know.

(Doc. No. 40-2 at 57). This kind of testimony—where a party admits a lack of knowledge as to a crucial aspect of its case—is exactly the kind of testimony that enables a defendant-movant to meet its initial burden of showing that the plaintiff cannot raise a genuine issue of material fact. And here it enables Defendant to meet its initial burden of showing the absence of a genuine issue of material fact as to whether Defendant's proffered non-discriminatory reason is pretext for retaliation, thus shifting to Plaintiff the burden of showing that there actually is a genuine issue of material fact preventing judgment for Defendant as a matter of law. Plaintiff conceivably can meet

---

[6] The Court will assume the same for purposes of its analysis.

this burden with other evidence even if his own testimony cited above by itself would suggest that perhaps he cannot meet it (which is what caused the burden to shift to him in the first place).[7]

In response, essentially attempting to meet his resulting burden, Plaintiff argues that two particular allegedly undisputed facts constitute direct evidence of retaliation, and alternatively (if indirect evidence subject to *McDonnell Douglas* framework). First, Plaintiff asserts that "it is undisputed that after receiving the November 8, 2017 letter, [Plaintiff] tried to contact Brady; finally, after reaching her, she told him that she knew he would not be back (from FMLA) and hung up on him." (Doc. No. 43 at 15-16 (citing Doc. No. 40-2 at 42, 44)). Second, Plaintiff points to the fact that Defendant's HR Representative admitted that some internal documents reflect Plaintiff's termination date as November 8 (before the expiration of his FMLA leave period) while claiming that this was due to an "administrative error."[8] (*Id.* at 15-16 (citing Doc. No. 40-1 at 24, 39, 49)). Plaintiff argues that this evidence is undisputed direct evidence of retaliation and, alternatively, "undisputed evidence of pretext, *i.e.*, a cover-up for illegal retaliation that can only be construed as an FMLA violation." (*Id.*).

Contrary to Plaintiff's contention, the Court finds that Plaintiff has not offered direct evidence of FMLA retaliation. To constitute "direct" evidence, evidence "must establish not only

---

[7] Plaintiff disputes the legitimate value of Defendant's position on Plaintiff's admission that he does not know how Defendant retaliated against him. But in fact, such admission has real value to Defendant in meeting its initial burden; even though, as Plaintiff notes, Plaintiff is a layperson and not a lawyer steeped in the concept of FMLA retaliation, such admission absolutely provides a real reason for the Court to believe that Plaintiff lacks evidence to proof his claim of retaliation. On the other hand, Plaintiff is right in the sense that his admission does not mean that he cannot point to other evidence that enables him to meet the burden shifted to him and thus avoid summary judgment on this claim.

[8] To the extent that Plaintiff here characterizes himself as actually being terminated on November 8, rather than merely being reflected in certain of Defendant's documents as having been terminated on November 8, the Court does not accept that characterization at this stage. As noted, there is a legitimate dispute of fact as to whether Plaintiff was actually terminated on November 8. What is *not* in dispute—what is known to be true—is that some of Defendant's documents reflect a termination date of November 8 and that Defendant's HR representative claims that this was the result of an administrative error. The Court here views Plaintiff's argument through the lens of what is *known*, not merely asserted (disputedly) by Plaintiff.

that the plaintiff's employer was predisposed to discriminate on the basis of [the FMLA], but also that the employer acted on that predisposition." *Daugherty*, 544 F.3d at 707 (alteration in original). "[D]irect evidence of discrimination does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Id*. Here, the alleged direct evidence (Plaintiff's alleged phone call to Ms. Brady and Defendant's labeling of the documents that reflect a November 8, 2017 termination date as "administrative error") simply does not compel the conclusion that Defendant was fired as a result of requesting and/or taking FMLA leave; Ms. Brady could have made those comments, and Defendant could have made this error, even if Plaintiff was fired for some other reason (such as Plaintiff's inability to return to work after the date of actual expiration of the FMLA period). Thus, the Court will analyze Plaintiff's FMLA retaliation claim under the *McDonnell Douglas* burden-shifting framework that applies to claims premised on indirect evidence.

While the Court disagrees with Plaintiff that it is undisputed that the alleged phone conversation with Ms. Brady referenced by Plaintiff actually occurred,[9] on Defendant's Motion, the Court must view the evidence in the light most favorable to Plaintiff, the non-moving party. *Tlapanco*, 969 F.3d at 647. According to Plaintiff, sometime after he received Defendant's November 8 letter, he called Ms. Brady and told her he would not be medically released until November 30 (which, as far as the record reflects, this is the first time Plaintiff informed Defendant of when he would be medically released to return to work), to which (according to Plaintiff) she replied "I know you won't be back" and hung up on him.

---

[9] As Defendant points out, Ms. Brady testified that she did not recall ever having a phone conversation with Plaintiff about his FMLA leave. (Doc. No. 45 at 6 (citing Doc. No. 36-2 at 3-4)). A reasonable juror could believe that Ms. Brady's testimony here was truthful and that the reason she did not recall such a conversation is that it never occurred.

Viewing this evidence in a light most favorable to Plaintiff, the jury could find that the phone call with Ms. Brady went down as Plaintiff claims, and it could easily (without real dispute) find that Defendant's documents reflected a November 8 termination date. The Court finds that a reasonable juror could find that this is indirect evidence of retaliation, *i.e.*, evidence that shows that Defendant's stated reason for Plaintiff's termination did not actually motivate Defendant. As discussed above, a reasonable juror could conclude from this evidence that Plaintiff was *actually* terminated on November 8, 2017, while he was on FMLA leave. Although temporal proximity alone is insufficient to establish pretext, "suspicious timing is a strong indicator of pretext when accompanied by some other, independent evidence." *Seeger*, 681 F.3d at 285. If Plaintiff's termination did in fact occur while he was on leave, that would certainly reflect "suspicious timing" that could lead a reasonable juror to conclude that it was perhaps Plaintiff's act of taking leave that motivated Defendant's actions. The reasonableness of such a conclusion is further supported by the fact that it is not clear from the record that Defendant was aware that Plaintiff would not be released by his physician to return to work until after the expiration of his FMLA leave on November 8. Indeed, in the portion of Plaintiff's deposition transcript that Defendant cites for the proposition that Defendant was aware Plaintiff would not be medically released until after the expiration of his FMLA leave, Plaintiff testified that he informed Ms. Brady of his medical release date *after* he received the letter dated November 8th. (Doc. No. 40 at 11 (citing Doc. No. 40-2 at 44)). Accordingly, viewing the evidence in a light most favorable to Plaintiff, a reasonable juror could conclude that Plaintiff was terminated during his FMLA leave and prior to Defendant being

actually aware that Plaintiff would not be medically released to return to work until a date after his FMLA leave expired.[10] If the jury viewed the timing this way, that would indeed be suspicious.

The Court must view this evidence (the temporal proximity of Plaintiff's termination to his use of FMLA leave, the phone call with Ms. Brady, and Defendant's internal documents reflecting termination of Plaintiff prior to the time the jury might conclude Defendant first learned that Plaintiff would be unable to return to work prior to the expiration of his FMLA leave) in a light most favorable to Plaintiff. So viewed, this is "'sufficient evidence from which a jury could reasonably reject [Defendant's] explanation of why it fired her.'" *Brown*, 814 F. App'x at 80 (citation omitted). A reasonable juror could conclude from this evidence that Defendant's proffered reason for Plaintiff's termination (Plaintiff's inability to return to work before the expiration of his FMLA leave) did not actually motivate Defendant to terminate Plaintiff.

Furthermore, a reasonable jury could conclude that Defendant's proffered non-retaliatory reason was not just *a* pretext, but a pretext for *retaliation* in particular. If, as a jury reasonably could find, Defendant's proffered reason was not the actual reason, and because the record reflects (and Defendant asserts) no other plausible reason for such termination, a reasonable juror could conclude that a desire to retaliate for the exercise of FMLA rights in fact was the reason for Plaintiff's termination. This is especially true in light of the above-discussed evidence of temporal

---

[10] Although evidence regarding what knowledge Defendant had at what time may help to defeat Defendant's motion for summary judgment as to Plaintiff's FMLA retaliation claim, whether Defendant was aware of Plaintiff's medical release date prior to his termination date is irrelevant for purposes of Plaintiff's FMLA interference claim. In *Edgar*, the Sixth Circuit explained that when reviewing a FMLA interference claim, "[r]ather than inquiring into the employer's motive at the time of the decision, the court is charged with resolving the objective question of whether the employee was capable of resuming his or her duties within the FMLA-leave period. Employers in entitlement [also known as interference] cases should thus be able to invoke *Cehrs* and 29 C.F.R. § 825.214(b) (the DOL regulation) *even if the medical evidence on which they rely did not emerge until after the employment decision occurred*." 443 F.3d at 512 (emphasis added). It is for that reason that issues of fact surrounding Defendant's knowledge may defeat Defendant's Motion as to Plaintiff's FMLA retaliation claim, but do not prevent the Court from granting summary judgment on Plaintiff's FMLA interference claim.

proximity and the phone call with Ms. Brady (which a reasonable juror could conclude indicated

Defendant's frustration with Plaintiff for taking FMLA leave), which could be taken by the jury

to suggest not only that Defendant's proffered reasons was not the real reason, but also that the

real reason was a desire to retaliate. Thus, there is a genuine issue of material fact as to whether

Defendant's real reason for terminating Plaintiff was retaliatory. *Ford Motor Co.*, 782 F.3d at 767

("To avoid summary judgment, then, the [plaintiff] must present evidence from which a reasonable

jury could find that poor performance was not the real reason that [the defendant] terminated [the

plaintiff], *and that unlawful retaliation in fact was.*") (emphasis added). In so finding, the Court

keeps in mind that  a plaintiff's burden to show pretext "is not heavy . . .  as summary judgment

[for the defendant] is warranted only if no reasonable juror could conclude that the employer's

offered reason was pretextual". *George v. Youngstown State Univ.*, 966 F.3d 446, 462 (6th Cir.

2020); *see also Kirkilenko-Ison*, 974 F.3d at 667 (quoting *George*, 966 F.3d at 462). Accordingly,

a genuine issue of material fact exists as to whether Defendant's proffered legitimate, non-

discriminatory reason is pretextual, and Defendant's Motion is denied as to Plaintiff's FMLA

retaliation claim.

        ii. Plaintiff's Motion

        In Plaintiff's Motion, he moves for summary judgment on his FMLA retaliation claim

arguing that

> It is undisputed that Magneti knew Norwood took FMLA (Norwood Dep. 20-24;
> Hinson Dep. 9, Ex. 23 pp. 231, 232, 233; Adams Dep. 13, 12, Ex. 24 p. 213-214).
> Magneti terminated Norwood before his FMLA entitlement was up. (Norwood
> Dep. Ex. 8; McMahon 14, 21-22, 26, 49, Ex. 12, 20; Attch. A, Sept. to Nov. 2017
> List to Security p. 234; Answer to Am. Complt. ECF 29, ¶9; Am. Complt., ECF 27,
> ¶9). It is undisputed that after receiving the November 8, 2017 letter, Norwood tried
> to contact Brady; finally, after reaching her, she told him that she knew he would
> not be back (from FMLA) and hung up on him. (Norwood Dep. 42, 44). McMahon
> admitted Norwood's termination while on FMLA was an "administrative error."
> (McMahon Dep. 24, 39, 49). This is direct evidence of retaliation for taking FMLA

leave. Even if this cannot be considered direct evidence, the admissions are undisputed evidence of pretext, *i.e.*, a cover-up for illegal retaliation that can only be construed as an FMLA violation. Accordingly, Plaintiff should be granted summary judgment on this claim.

(Doc. No. 37 at 11).[11]

As discussed above, the *McDonnell Douglas* burden-shifting framework applies to Plaintiff's FMLA retaliation claim. Assuming *arguendo* that Plaintiff has proffered a *prima facie* case, here, Defendant proffered a legitimate non-retaliatory reason for Plaintiff's termination— Plaintiff's exhaustion of his FMLA leave. (Doc. No. 45 at 7). Plaintiff argues that Plaintiff's phone call with Ms. Brady, and Defendant's labeling of the November 8 termination date as "administrative error" are "undisputed evidence of pretext, *i.e.*, a cover-up for illegal retaliation that can only be construed as an FMLA violation." However, as discussed above, it is disputed whether Plaintiff's phone call with Ms. Brady occurred. Additionally, Plaintiff's termination date is disputed, and according to Defendant, it terminated Plaintiff on November 22, 2017 after Plaintiff's FMLA leave expired and prior to him returning to work, which could lead a reasonable juror to find Defendant's proffered reason for Plaintiff's termination more probable. Moreover, Plaintiff's proffered evidence of pretext is not enough for a jury to necessarily be required to find that Defendant's actual reason for Plaintiff's termination was retaliatory. *See Timmer*, 104 F.3d at 843 ("if the moving party will bear the burden of persuasion at trial, then that party must support its motion with credible evidence that would entitle it to a directed verdict if not controverted at trial." (citing *Celotex Corp.*, 477 U.S. at 322-23)). Thus, Plaintiff has not met his initial burden to demonstrate the absence of a genuine dispute of material fact as to whether Defendant's proffered

---

[11] The Court notes that, as discussed above, it is in fact disputed whether Defendant terminated Plaintiff before his FMLA entitlement was up.

legitimate, non-discriminatory excuse for Plaintiff's termination was pretextual and Plaintiff's Motion as to its FMLA retaliation claim is denied.

## II. Americans with Disabilities Act

### A. *ADA Discrimination*

The ADA makes it unlawful for an employer to discriminate against an employee "on the basis of disability in regard to job application procedures, [or] the hiring, advancement, or discharge [of employment.]" 42 U.S.C. § 12112(a). To establish a prima facie case of disability discrimination, "a plaintiff must show that 1) he or she is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced."[12] *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 306 (6th Cir. 2016) (citing *Whitfield v. Tennessee*, 639 F.3d 253, 258–59 (6th Cir. 2011)). Furthermore, the disability must be a "but for" cause of the adverse employment action. *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 318 (6th Cir. 2012) (en banc).

### i. Defendant's Motion

Defendant raises a single argument in regard to Plaintiff's ADA disability discrimination claims: Plaintiff's ADA discrimination claim fails because the record evidence demonstrates that Plaintiff does not have a disability within the meaning of the ADA.

The ADA defines disability as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1)(A). Under the ADA,

---

[12] Although the Sixth Circuit here used the term "disabled," the statute speaks in terms not of "disabled" persons, but rather of persons "[having a] disability," and the Court will use the latter terminology.

"[m]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). To determine whether a disability substantially limits major life activities, courts should compare the person claiming a disability to most people in the general population. *Hostettler*, 895 F.3d at 853. The impairment does not have to prevent, or significantly or severely restrict, a major life activity to be substantially limiting. *Id*. Moreover, "'[t]he term "substantially limits" shall be construed broadly in favor of expansive coverage' and 'is not meant to be a demanding standard.'" *Id*. (quoting 29 C.F.R. § 1630.2(j)(1)(i)).

Defendant argues that Plaintiff cannot prove he has a disability as defined by the ADA, because (according to Defendant) "[t]emporary conditions resulting from surgery do not amount to 'substantial limitations' and thus will not rise to the level of a disability under the ADA." (Doc. No. 40 at 7). Thus, Defendant contends that Plaintiff's ADA discrimination claim fails because "[a] temporary condition resulting from surgery is exactly what is at issue in this case." (*Id*.).

In response, referring to amendments to the ADA enacted in 2008,[13] Plaintiff argues that "[t]he Sixth Circuit has unequivocally put to rest arguments, such as those [Defendant] relies on, that any analysis of pre-amendment 'disability' definitions and case law remains persuasive—it

---

[13] Effective January 1, 2009, these amendments (known as the "ADAAA") were enacted to ensure "a broad scope of protection to be available under the ADA" and to reject the "inappropriately high" standards for interpreting the term "substantially limits" created by two Supreme Court decisions: *Sutton v. United Air Lines*, 527 U.S. 471 (1999) and *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184 (2002). *See Taylor v. Specialty Rest. Corp.*, No. 2:12-cv-44, 2014 WL 4922942, at *4 (S.D. Ohio Sept. 30, 2014) (quoting ADAAA). However, despite this more lenient standard, "not every impairment will constitute a disability with the meaning [of the ADAAA]." 29 C.F.R. § 1630.2(j)(1)(ii). Additionally, "the ADAAA left untouched the plaintiff's burden of proof in a disability case; he still has to prove he has a disability." *Lloyd v. Hous. Auth. of the City of Montgomery, Ala.*, 857 F. Supp. 2d 1252, 1263 (M.D. Ala. 2012) (explaining that the plaintiff still has the burden to prove he has a disability because "[a] contrary rule would require courts to gaze into a crystal ball, put on a white coat, and divine how a given impairment would have affected the plaintiff[.]").

does not." (Doc. No. 43 at 8 (citing *Morissey v. Laurel Health Care Co.*, 943 F.3d 1032, 1029 (6th Cir. 2019) ("Under the 2008 amendments to the ADA, Congress made clear that the definitions of both a 'disabled person' and 'substantially limits' are to 'be construed broadly in favor of coverage.'"))). Plaintiff asserts that Defendant's "argument evidences a misapplication of the plain language of the statute" and that "the ADA does not require a specific minimum duration that an impairment must last in order to be substantially limiting[.]" (Doc. No. 29 at 12). Plaintiff points out that the regulations state that an impairment "lasting or expected to last fewer than six months can be 'substantially limiting.'" (*Id.* at 10). Thus, Plaintiff argues that because his "major life activities of lifting and his musculoskeletal system were affected by his torn rotator cuff and repair, he had a disability as defined by the ADA." (*Id.* at 11-12).

The Court agrees with Plaintiff on the point that a temporary condition can constitute a disability as defined by the ADA. *See Lowe v. Calsonickansei N. Am., Inc*, No. 1:18-CV-00027, 2020 WL 2473757, at *5 (M.D. Tenn. May 13, 2020) ("'[T]he pertinent inquiry is not whether plaintiff's restrictions were labelled "temporary" or "permanent" or the precise length of time [ ] he was under restrictions, but whether [ ]he was substantially limited in a major life activity.'" (quoting *Mullenix v. Eastman Chem. Co.*, 237 F. Supp. 3d 695, 705 (E.D. Tenn. 2017))). The authority Defendant provides the Court supporting its argument that a "temporary" condition cannot constitute a disability for purposes of the ADA are either pre-Amendment cases, or more recent cases that rely upon pre-Amendment case law, and thus not authoritative. (*See* Doc. No. 40 at 7 (citing cases)).[14]

---

[14] Commenting sagely on the perils of reliance on pre-amendment case law on this issue, one court in this circuit, while "acknowledging that certain holdings from cases decided prior to the 2008 amendments were not affected [by those amendments]," noted:

> In the ADA Amendments Act of 2008, "Congress announced, in statutory language, that it 'rejected' prior Supreme Court interpretations of the Americans with Disabilities Act (ADA) which set an

Additionally, Defendant argues that even if "a surgery such as [Plaintiff's] could qualify him as disabled," Plaintiff failed to demonstrate he was substantially limited in a major life activity because of the following testimony:

> Q. Is there anything that you cannot do now with your shoulder that you could do before?
>
> A. No. I pretty much got full use of it. It's just if I tend to strain it a little bit, it hurts. I have to really watch what I do.
>
> Q. Does it prevent you from sleeping or cause any other problems?
>
> A. At times, yes.
>
> Q. How does it interfere with your sleep?
>
> A. If I sleep on my right shoulder continuously, or try to, I don't get no sleep.
>
> Q. But if you sleep on your left side, you're okay?
>
> A. Yeah, as long as I'm off the right side. Causes it to go numb, hurt, everything else.
>
> Q. Does it cause you any other problems, other than with respect to sleep?
>
> A. Not really.

(Doc. No. 40 at 8-9 (citing Doc. No. 40-2 at 50-51)). But the referenced testimony describes Plaintiff's injury at the time the deposition occurred—nearly two years after his termination, by which time the condition of his shoulder obviously could have improved. This renders the testimony immaterial because the Court does not look to whether Plaintiff has a disability presently or at the time of his deposition; rather the relevant inquiry is whether Plaintiff, "*at the time of the*

---

extremely high standard for what kinds of impairments could constitute a qualifying disability. The ADAAA stated that the courts were to construe the ADA's definition of disability in favor of 'broad coverage.'"

*Transue v. Curtiss-Wright Flow Control Corp.*, No. 1:14-cv-1135, 2016 WL 1704231, at * 5 n.1 (N.D. Ohio Apr. 28, 2016) (quoting Deborah A. Widiss, *Still Kickin' After All These Years: Sutton and Toyota as Shadow Precedents*, 63 Drake L. Rev. 919, 920 (2015)).

*adverse employment action*, the limitation caused by the impairment was 'substantial.'" *Bush v. Donahoe*, 964 F. Supp. 2d 401, 417 (W.D. Pa. 2013) (emphasis added); *see also Lockhart v. Marietta City Sch.*, No. 2:19-CV-2935, 2020 WL 6782209, at *9 (S.D. Ohio Nov. 18, 2020) (explaining that to prove ADA disability discrimination a plaintiff "must demonstrate [that] she was disabled *at the time of the adverse employment action*") (emphasis added). Thus, this testimony adds nothing to Defendant's argument that Plaintiff cannot demonstrate that she was disabled within the meaning of the ADA.

Therefore, the Court finds that Defendant has not met its initial burden on its summary judgment motion to demonstrate that the undisputed record evidence reveals that Plaintiff does not have a disability within the meaning of the ADA. Thus, Defendant's Motion with respect to Plaintiff's ADA discrimination claim is denied.

B. *ADA Retaliation, Failure to Accommodate, and Failure to Engage in an Interactive Process*

As Plaintiff points out, Defendant does not raise any argument regarding Plaintiff's ADA retaliation, failure to accommodate, and failure to engage in an interactive process claims. Thus, although Defendant indicates that it seeks summary judgment on all claims (not least by filing a motion for summary judgment rather than a motion for partial summary judgment), it shows not grounds for summary judgment as to these claims, and these claims accordingly will proceed to trial.

ii. Plaintiff's Motion

Plaintiff argues that he is entitled to summary judgment on each of his claims brought pursuant to the ADA—disability discrimination, failure to accommodate, failure to engage in the interactive process, and retaliation. The Court first addresses the first three of these collectively.

A. *Disability Discrimination, Failure to Accommodate, and Failure to Engage in the Interactive Process.*

Plaintiff's disability discrimination, failure to accommodate, and failure to engage in the interactive process claims require Plaintiff to show, among other things, that he has a disability and is otherwise qualified for the position, with or without reasonable accommodation.[15] *See Wheeler v. Jackson Nat'l Life Ins. Co.*, 159 F. Supp. 3d 828, 856 (M.D. Tenn.), *aff'd*, 666 F. App'x 453 (6th Cir. 2016) (citing 29 C.F.R. § 1630.2(o)(3)) (interactive process); *Tennial*, 840 F.3d at 306 (disability discrimination); *Johnson v. Cleveland City Sch. Dist.*, 443 F. App'x 974, 982-82 (6th Cir. 2011) (failure to accommodate). Plaintiff is not entitled to summary judgment on these claims because Plaintiff has not met his initial burden on summary judgment to show that there is no disputed issue of material fact as to whether whether Plaintiff has a disability.

As noted above, the ADA defines a disability as "a physical or mental impairment that substantially limits one or more major life activities of such individual[.]" 42 U.S.C. § 12102(1)(A). Plaintiff relies on the following evidence to demonstrate it is undisputed that Plaintiff has a disability:

> Dr. Adams testified that a torn rotator cuff affects the musculoskeletal system. (Adams Dep. 11-12). Thus, the definition is satisfied on this basis alone. Moreover, Norwood's shoulder injury required surgery, pain management, physical therapy, three months' recovery, a year to heal and two years' later he still experiences pain. (Norwood Dep. 49, 78; Adams Dep. 8-9, 14, 16, 19, Adams Dep. Ex. 24 pp. 195, 202, 205). *Morrissey*, 943 F.3d at 1040 (relevant information that a person has a disability "could include, among other things, a diagnosis, a treatment plan, apparent severe symptoms, and physician-imposed work restrictions"). Because Norwood's major life activities of lifting and his musculoskeletal system were affected by his torn rotator cuff and repair, he had a disability as defined by the ADA. 42 U.S.C. § 12102(2)(A), (B); 29 C.F.R. § 1630.2(h)(1), (i)(1)(ii).

(Doc. No. 37 at 14).

---

[15] Unlike with an FMLA retaliation claim, a plaintiff who premises his ADA claim upon direct evidence must still show a *prima facie* case, which includes a showing that the plaintiff has a disability. *See Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 869 (6th Cir. 2007). Nevertheless, as discussed below, Plaintiff concedes that his ADA claim is based on indirect evidence. (Doc. No. 37 at 21).

In response, Defendants argue that Dr. Adams' testimony cited by Plaintiffs is "conclusory" and "do not speak to [Plaintiff's] surgery or his subsequent condition following surgery." (Doc. No. 45 at 9). The Court agrees with Defendants. In Dr. Adams' testimony cited by Plaintiffs, he testified to the limitations caused by Plaintiff's (or more specifically, the limitations of anyone who has a rotator cuff tear generally) injury prior to his surgery. Although Plaintiff argues that his ability to lift was substantially limited by his "torn rotator cuff *and repair*," Plaintiff does not cite to any evidence that demonstrates how or to what extent Plaintiff's major life activities were affected during the time in which he was recovering from his surgery, which is when the adverse employment action occurred. *See Showers v. Endoscopy Ctr. of Cent. Pennsylvania, LLC*, 58 F. Supp. 3d 446, 460 (M.D. Pa. 2014) ("A plaintiff is disabled within the meaning of the ADA only if she had a disability at the time of the adverse employment decision.") (citation omitted).

Moreover, to the extent that Dr. Adams's testimony is properly deemed that of a (lay) fact witness, it is axiomatic that a jury can reject it. And to the extent that his testimony is that of an expert witness, a jury likewise could reject it; even uncontradicted expert testimony is not conclusive. *See, e.g.*, *Powers v. Bayliner Marine Corp.*, 83 F.3d 789, 797–98 (6th Cir. 1996); *In re Intelligent Direct Mktg.*, 518 B.R. 579, 593 (E.D. Cal. 2014) (quoting *In re 3dfx Interactive, Inc.,* 389 B.R. 842, 868 (Bankr. N.D. Cal. 2008)). And on Plaintiff's Motion, the Court is to draw all reasonable inferences in favor of Defendant, thus, the absence of such evidence could lead to the reasonable inference that Plaintiff was not substantially limited in his ability to lift when he was terminated nearly two months post-surgery. Moreover, the Court notes that whether a plaintiff is "substantially limited" is a question of fact often better suited for the jury. *See Quirin v. Abbott Labs.*, No. 1:08-CV-011, 2009 WL 1456478, at *6 (W.D. Mich. May 22, 2009) ("Whether an

impairment substantially limits the major life activity at issue is ordinarily a question of fact." (citing *Roush v. Weastec, Inc.*, 96 F.3d 840, 844 (6th Cir. 1996))). Therefore, Plaintiff's proffered evidence, when viewed in a light most favorable to Defendant, does not demonstrate that Plaintiff was undisputedly disabled as defined by the ADA.

Accordingly, Plaintiff has not met its initial burden on its summary judgment motion to demonstrate that the undisputed record evidence reveals that Plaintiff has a disability within the meaning of the ADA. Therefore, Plaintiff's Motion is denied as to Plaintiff's ADA claims of disability discrimination, failure to accommodate, and failure to engage in the interactive process.

B. *ADA Retaliation*

"[T]o establish a retaliation claim the plaintiff need not prove he had a disability under the ADA. Rather, the protected act is the showing of a good-faith request for reasonable accommodations." *Baker v. Windsor Republic Doors*, 414 F. App'x 764, 777 (6th Cir. 2011) (citing *Krouse v. Am. Sterilizer Co*., 126 F.3d 494, 502 (3d Cir. 1997) ("An individual who is adjudged not to be a 'qualified individual with a disability' may still pursue a retaliation claim under the ADA.")). Thus, despite the Court's conclusion immediately above, Plaintiff may still be entitled to summary judgment on his ADA retaliation claim.

ADA retaliation claims based on indirect evidence of retaliation are analyzed using the burden-shifting approach established in *McDonnell Douglas* burden-shifting framework.[16] *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014) (citing *A.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 697 (6th Cir. 2013)). Under this approach, the initial burden is on the plaintiff at trial to make out a *prima facie* case of discrimination by demonstrating that (1) the plaintiff engaged in activity protected under the ADA;  (2) the employer knew of that activity; (3) the employer took

---

[16] Plaintiff concedes that his ADA retaliation claim is based on indirect evidence. (Doc. No. 37 at 21).

an adverse action against plaintiff; and (4) there was a causal connection between the protected activity and the adverse action. *Id*. The plaintiff must show "but for" causation. *Lewis*, 681 F.3d at 321.

If the plaintiff establishes a *prima facie* case of discrimination under the ADA, then the burden shifts the defendant to offer a legitimate, nondiscriminatory reason for the adverse employment action. *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1105 (6th Cir. 2008). If the defendant makes that proffer, then the burden shifts back to the plaintiff to show by a preponderance of the evidence that the defendant's proffered reason is merely a pretext for discrimination. *Id*.

Plaintiff argues that the undisputed evidence demonstrates that he had met his *prima facie* case. Even assuming that this is true, Defendant proffers a legitimate, non-discriminatory reason for Plaintiff's termination—exhaustion of Plaintiff's FMLA leave. In neither the memorandum in support of Plaintiff's Motion (nor in any reply, which Plaintiff did not file), Plaintiff fails to point to evidence, or even argue, in the context of his ADA retaliation claim that this reason was a pretext for termination. And assuming that Plaintiff's pretext argument would be similar to Plaintiff's pretext-argument in regard to his FMLA retaliation claim, as discussed above there are genuine issues of material fact as to whether Defendant's proffered reason is pretext for discrimination. This is fatal to his argument, given that despite he had conceded that his claim is based (solely) on indirect evidence. (Doc. No. 37 at 21). Accordingly, Plaintiff's Motion is denied with respect to his ADA retaliation claim because Plaintiff has failed to meet his initial burden at summary judgment by identifying portions of the record that demonstrate the absence of a genuine issue of material fact.

### III. Tennessee Disability Act

Defendant contends that it should be granted summary judgment on Plaintiff's TDA claims for the same reasons as that it should be granted summary judgment as to Plaintiff's ADA claims. Because the Court denies Defendant's Motion with respect to Plaintiff's ADA claims, it also denies Defendant's Motion to dismiss the TDA Claims.

Plaintiff does not mention its TDA claims in its summary judgment motion. Nevertheless, even if he had, those claims would be denied for the same reasons the Court denies Plaintiff's Motion with respect to his ADA claims.

### CONCLUSION

For the reasons discussed above, Defendant's Motion is granted in part and denied in part, and Plaintiff's Motion is denied. Defendant will be granted summary judgment on Plaintiff's FMLA interference claim. All other claims will proceed to trial.

An appropriate order will be entered.

_Eli Richardson_

ELI RICHARDSON
UNITED STATES DISTRICT JUDGE